67 A.3d 736

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**David A. WILSON, Appellant.**

Supreme Court of Pennsylvania.

Argued May 8, 2012.

Decided May 28, 2013.

---

*Id.*

Victor Edward Rauch, Defender Association of Philadelphia, Karl Baker, Philadelphia, for Appellant.

Hugh J. Burns, Jr., Philadelphia, Priya M. Travassos, Philadelphia District Attorney's Office, for Appellee.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Chief Justice CASTILLE.

This Court granted allocatur to consider whether a probation condition authorizing warrantless, suspicionless searches of a probationer's home violates statutory and constitutional precepts. For the reasons that follow, we vacate the order of the Superior Court on statutory grounds and remand for resentencing.

This matter emanates from the Philadelphia Gun Court, a specialized court within the Court of Common Pleas. That body was instituted by the First Judicial District on January 10, 2005 as a response to the marked increase in gun violence in Philadelphia, and was established to provide prompt adjudication of gun-related offenses. All Philadelphia gun cases where the most serious charge was a violation of the Pennsylvania Uniform Firearms Act of 1995 ("VUFA"), 18 Pa.C.S. § 6101 *et seq.*, were to be handled by the Philadelphia Gun Court.

Testimony at appellant's trial established that in the early morning hours of September 1, 2007, a Philadelphia police officer observed appellant standing next to a parked automobile on the 3900 block of Mellon Street in Philadelphia. Appellant was pointing a handgun through the passenger window at the driver. The police officer ordered appellant to drop his weapon. Appellant did not comply, but instead, gun in hand, retreated to a nearby residence. The police officer repeated his demand that appellant drop his weapon. Appellant finally complied, and placed himself on the ground in compliance with

the officer's direction. The police officer, and a second officer who arrived on the scene in response to a call for back up, retrieved a loaded .38 caliber revolver. Police also recovered seven packets of marijuana and five packets of cocaine from appellant.

Appellant was tried non jury. He was represented at trial by the Defender Association of Philadelphia ("Defender Association"). At trial, in addition to evidence relative to appellant's conduct on September 1, 2007, the Commonwealth presented the Quarter Sessions file from a previous prosecution in which appellant was convicted of another VUFA offense; this information was relevant to prove that appellant was a convicted felon prohibited from possessing a firearm.

Following the bench trial, appellant was convicted of three counts of VUFA: 18 Pa.C.S. § 6105 (persons not to possess or own firearms), § 6108 (unlicensed carrying of firearm in public in Philadelphia), and § 6110.2 (possessing firearm with altered serial number). He was also convicted of one count of possession of a controlled substance, 35 P.S. § 780–113(a)(16).

On August 18, 2008, appellant was sentenced by the Honorable Susan I. Schulman. The trial court noted that it was sentencing appellant only on the charge of violating Section 6105; no sentence was imposed on the remaining charges. N.T., 8/18/2008, at 62–63. The Commonwealth requested a sentence of 3 to 6 years, a term falling in the standard range of the sentencing guidelines. *Id.* at 58. The trial court instead sentenced appellant to a mitigated-range sentence of 21/2 to 5 years' incarceration, to be followed by three years' probation. *Id.* at 62–63.

The trial court emphasized that there was no stricter probation than Gun Court probation. As a condition of probation and of parole, the trial court authorized warrantless, suspicionless searches of appellant's residence for weapons, and prohibited him from residing in a household where anyone had a firearm. The court also explained that Gun Court probation officers had smaller caseloads and reported directly to the judge; and that any violation of the probation would result in

appellant serving the balance of his sentence in jail. *Id.* at 63–64. Appellant did not object to the probationary condition at sentencing, nor did he file a post-sentencing motion.

Appellant filed a *pro se* notice of appeal; it is not clear why his court-appointed counsel did not file the notice. Appellant failed to comply with the trial court's directive that he file a Pa.R.A.P. 1925(b) Statement of Matters Complained of on Appeal. On February 10, 2009, the trial court filed an opinion stating that all claims were waived.

On February 12, 2009, an attorney from the Defender Association entered an appearance in the Superior Court.[1] Counsel petitioned the Superior Court for a remand to file a Rule 1925 statement. Remand was granted, and counsel filed a Rule 1925(b) Statement which challenged, for the first time, the propriety and "legality" of the condition allowing for random searches during the term of parole and probation.

Subsequently, the trial court issued an opinion explaining the reasons for the condition. The trial court emphasized that appellant, who was only 20 years old at the time of sentencing, already had an extensive criminal history. Also, the crimes for which appellant was convicted were serious. The trial court also observed that "[h]is conduct in this case-pointing a loaded gun at a passenger in a car-showed his propensity for violent, and possibly deadly, behavior." Tr. ct. slip op., dated 5/04/2008, at 4.

The trial court explained that the probation condition permitting warrantless, suspicionless searches of appellant's residence for weapons comported with the statutory authorization that a sentencing court may "impose 'reasonable conditions' that it deems necessary to 'insure or assist the defendant in leading a law-abiding life.'" *Id.* (quoting 42 Pa.C.S. § 9754). The trial court opined that this condition complies with Section

---

1. A subsequent trial court opinion states that the Defender Association was first appointed to represent appellant on February 11, 2009. Tr. ct. slip op., dated 5/04/2008, at 1. This is not in accord with the trial court docket entries. The trial court docket reveals that the Defender Association was appointed as appellant's counsel on June 13, 2008, prior to trial. Additionally, there is no entry on or around February 11, 2009 indicating that counsel was appointed.

9754. The trial court stated that "[i]t has been the considered judgment of not only this [c]ourt, but also its predecessors sitting in Gun Court, that random searches of the residence of a probationer convicted of violating the most serious VUFA offense, that of possessing a firearm as a prior convicted felon ..., [are] both reasonable and necessary." *Id.* at 4–5.

Finally, the trial court recognized that there are statutory limits on a probation officer's authority to search a probationer or his property. *Id.* at 5 (citing, *inter alia*, 61 P.S. § 331.27b, *recodified at* 42 Pa.C.S. § 9912, *effective* October 13, 2009).[2] The trial court recognized that Section 9912 provides that a probation officer may conduct warrantless searches of the property of an offender only if the officer has reasonable suspicion to believe that the property contains contraband or other evidence of violations of the offender's conditions of probation. The trial court, however, did not find that this statutory framework confined its authority to fashion a sentence. Instead, the trial court reasoned that "there is no violation of Appellant's constitutional protections where the specific condition or probation prevents Appellant from residing where anyone has a firearm, and where Appellant is advised that there could be random searches to determine whether he is compliant." Tr. ct. slip op., dated 5/04/2008, at 5.

On appeal to the Superior Court, appellant argued that the warrantless, suspicionless searches condition was invalid. Appellant argued, *inter alia*, that the condition violated the Fourth Amendment of the United States Constitution and Article 1, § 8 of the Pennsylvania Constitution. He also claimed that the condition was in tension with Section 9912's provision that a probation officer may conduct a warrantless search of a probationer's property only if the officer has reasonable suspicion that contraband or other evidence of a violation of probation will be found.

**2.** Section 9912 is substantially a reenactment of Section 331.27b. While the trial court referenced § 331.27b as appellant's sentence was imposed prior to the recodification, for the sake of clarity, we shall refer not to the former designation of Section 331.27b, but rather to the present designation of Section 9912.

On October 14, 2009, a panel of the Superior Court affirmed in part and vacated in part the judgment of sentence in a brief memorandum opinion. The panel vacated that portion of the sentence which authorized warrantless, suspicionless searches as a condition of probation or parole on a state sentence.[3] The panel also rejected the Commonwealth's argument that appellant had waived the claim by failing to raise it before the trial court, characterizing the claim as one sounding in sentencing legality.

The Commonwealth sought, and was granted, reargument. The Superior Court *en banc* issued a split decision which affirmed the search condition as it applied to the probationary sentence, but vacated the condition as it applied to "the state parole aspect of the sentence." *Commonwealth v. Wilson*, 11 A.3d 519 (Pa.Super.2010). Judge Panella, joined by Judges Stevens, Shogan, and Allen, authored the lead opinion which was denoted as an Opinion in Support of Affirmance ("OISA"), notwithstanding the mandate of partial vacatur The OISA first considered the Commonwealth's argument that appellant's challenge went to the discretionary aspects of his sentence and was waived as appellant failed to raise it before the trial court. Citing Superior Court authority, the OISA rejected this argument and found that "whether the trial court possessed the authority to impose a particular sentence implicates the legality of the sentence[.]" *Id.* at 525 (citing *Commonwealth v. Mears*, 972 A.2d 1210, 1211 (Pa.Super.2009) (internal quotation marks omitted)). Thus, the claim was deemed nonwaivable.

Turning to the merits, the OISA first considered whether the warrantless, suspicionless search condition was valid as it

3. In rendering its decision, the Superior Court relied on its September 16, 2009 decision in *Commonwealth v. Galendez*, 2798 EDA 2007. The *Galendez* panel decision stated that a sentencing court was not allowed to impose as a condition of parole or probation that the defendant would be subjected to warrantless, suspicionless searches for weapons. At the time the Superior Court issued its panel decision in the matter *sub judice*, the *Galendez* panel opinion was published.

After the Superior Court panel issued its October 14, 2009 decision in the matter *sub judice*, the Superior Court granted reargument in *Galendez*. *See* 2798 EDA 2007 (order dated 11/25/2009). That order also directed that the September 16, 2009 decision was withdrawn.

related to probation. The OISA noted that in fashioning a probationary sentence, the trial court's primary concern is to promote the probationer's rehabilitation and restoration to a useful life. The OISA observed that the purpose of conditions placed on probation orders is to assist a probationer in leading a law-abiding life; the Sentencing Code authorizes a trial court, *inter alia*, to impose reasonable conditions that are reasonably related to the probationer's rehabilitation. *Id.* (citing 42 Pa.C.S. § 9754(c)(13)).

The OISA found that permitting warrantless, suspicionless searches was an appropriate condition that was reasonably related to appellant's rehabilitation. It observed that the trial court was aware that probationers have great incentive to conceal any criminal activities and quickly dispose of incriminating evidence; they are also more likely than the average citizen to violate the law. The OISA found that the condition was particularly appropriate with respect to appellant, considering the nature of his crime and the fact that he had a history of firearms offenses. *Id.* at 526.

The OISA also found the condition appropriate for reasons extending beyond appellant's particular case. *Id.* (noting that condition was "eminently reasonable" because it was "clearly tied to [appellant's] rehabilitation and protection of the public[;]" further noting that condition was "especially reasonable in light of the epidemic of gun violence in Philadelphia.") Given that trial courts are confronted with the task of deterring violent crimes and ensuring the public's protection, the OISA concluded that trial courts "must be afforded every available and lawful tool in their arsenal to effectively stem this deadly tide of violence plaguing too many of our cities." *Id.*

The OISA next addressed appellant's argument that Section 9912 curtails the trial court's authority to impose such a condition on probation, since a probation officer cannot conduct such a search without reasonable suspicion. The OISA rejected this argument. It adopted a limited reading of Section 9912(d)(2), finding that it applied only to searches by probation officers acting on their own authority without any

judicial sanction. The OISA determined that Section 9912(d)(2) does not limit the authority of the trial court to impose a condition of probation that the probationer be subject to warrantless, suspicionless searches.

The OISA then proceeded to consider, and reject, appellant's constitutional claims. However, given our disposition on statutory grounds, we need not discuss this aspect of the opinion.

Finally, the OISA turned to appellant's argument that the search condition was unlawful insofar as it applied to parole. The OISA noted that the Pennsylvania Board of Probation and Parole ("Board") is responsible for setting the terms of parole; a trial court is without authority to set parole terms. The OISA therefore vacated the parole search condition.

Then–President Judge Ford Elliott authored a concurring statement, noting that she concurred in the result reached by the lead opinion. On the probation condition issue, President Judge Ford Elliott would have denied relief solely on waiver grounds because she believed that the challenge implicates the discretionary aspects of appellant's sentence, and not its legality. As appellant did not raise the issue before the trial court, President Judge Ford Elliott would have found that the probation search issue was waived. In a footnote, however, President Judge Ford Elliott noted that she was in agreement with both "the rationale and result" of the OISA holding that the condition respecting parole was an illegal sentence. *Wilson*, 11 A.3d at 531–33 (Ford Elliott, P.J., concurring).[4]

Judge Lazarus, joined by Judges Gantman, Donohue, and Mundy, authored an opinion in support of reversal ("OISR").[5] The OISR joined the OISA in finding that the issues involved (respecting both probation and parole) implicated the legality

4. The Commonwealth did not cross-appeal from the holding respecting parole; thus, the question of the propriety of the search condition as a parole matter is not before this Court.

5. Since President Judge Ford Elliott's concurrence provided a fifth vote for the OISA's mandate as to both the probation search issue and the parole search issues, the OISR is more accurately styled as a Concurring and Dissenting Opinion. Nevertheless, we will employ the nomenclature employed below.

of the sentence. The OISR also concurred in the OISA's finding that the trial court's imposition of a search condition on parole was unenforceable because parole is under the exclusive supervision of the Board, and not the courts of common pleas.[6]

The OISR, however, would have found that the warrantless, suspicionless search condition imposed on appellant's probationary sentence was invalid. The OISR concluded that such a condition violated the plain language of Section 9912(d)(2). The OISR reasoned that the General Assembly had promulgated Section 9912 to regulate the manner in which probation officers may function, and that a trial court is not free to authorize those officers to violate the boundaries imposed by the General Assembly. Therefore, the OISR would have held that the trial court lacked authority to direct probation officers to perform warrantless, suspicionless searches of appellant's property, in contravention of Section 9912(d)(2).

■ Appellant filed a Petition for Allowance of Appeal, which this Court granted; appellant stated the issue on appeal as:

Is not the probation condition authorizing random, suspicionless searches of [appellant's] home illegal, as a violation of 42 Pa.C.S. § 9912(d)(2), as well as the Fourth Amendment of the U.S. Constitution and Article 1, Section 8 of the Pennsylvania Constitution?

*Commonwealth v. Wilson*, 26 EAL 2011 (order dated 6/07/2011). The appeal poses questions of law; thus, our scope of review is plenary and our standard of review is *de novo*. *Commonwealth v. Weigle*, 606 Pa. 234, 997 A.2d 306 (2010).

■ Preliminarily, we note that, when considering matters which raise both constitutional and non-constitutional bases for relief, we attempt to resolve the matter on non-constitutional grounds whenever practicable. *See In re Farnese*, 609 Pa. 543, 17 A.3d 357, 373 (2011); *In re Fiori*, 543 Pa. 592, 673

6. Thus, on the parole search issue, the court was unanimous as to both reviewability and the merits.

A.2d 905, 909 (1996). Thus, we will commence our analysis by looking first at appellant's statutory argument.

Appellant asserts that the warrantless, suspicionless probation search condition runs afoul of Section 9912(d) entitled "grounds for personal search." Subsection (d)(2) provides that a probation officer may conduct a property search of an offender under his supervision "if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision." 42 Pa.C.S. § 9912(d)(2). A property search is defined as "[a] warrantless search of real property, vehicle or personal property which is in the possession or under the control of an offender." 42 Pa.C.S. § 9911. The statute further restricts the behavior of probation officers by requiring that "[p]rior approval of a supervisor shall be obtained for a property search absent exigent circumstances." 42 Pa.C.S. § 9912(d)(3). The terminology employed in these provisions— search, reasonable suspicion, exigent circumstances—are immediately recognizable to lawyers and judges as terms of art employed in search and seizure jurisprudence.

Appellant argues that the Superior Court OISA erred when it concluded that Section 9912(d)(2)'s reasonable suspicion standard applies only when probation officers conduct property searches based on their own authority, and has no applicability to a trial court pre-authorizing searches when fashioning a probationary sentence. Appellant maintains that the Superior Court's interpretation effectively inserts a non-textual exception into Section 9912, permitting warrantless, suspicionless property searches by probation officers when such permission is granted in a sentencing order. In appellant's view, such a construction of the statute is contrary to the plain meaning of Section 9912. The statute, appellant stresses, contains no exceptions or restrictions on its scope: it simply is not written so that it applies only to those searches which are initiated by a probation officer without court authorization.

Additionally, appellant argues that such a broad reading runs counter to the General Assembly's intent in adopting

Section 9912. Appellant notes that the progenitor of Section 9912 was adopted after the Court's decision in *Commonwealth v. Pickron*, 535 Pa. 241, 634 A.2d 1093 (1993). In *Pickron*, parole officers arrived at the parolee's apartment with an arrest warrant and were admitted by the parolee's mother for the limited purpose of searching for the parolee. Upon entering the residence, the officers observed evidence indicating the presence of narcotics. The officers immediately expanded their search to areas that were too small to contain the parolee, but could contain evidence of narcotics. The officers then seized a package of white powder and other evidence indicating the presence of illegal narcotics, arrested the parolee and new charges were filed. Prior to trial, the parolee filed a suppression motion, which the trial court granted. Upon the Commonwealth's pre-trial appeal, the Superior Court reversed, but upon further discretionary review, this Court reversed and reinstated the suppression ruling.

The Court observed that there was no statute or regulation providing guidance by which a probation or parole officer could conduct a warrantless search. The Court reasoned that absent this statutory or regulatory guidance, or an agreement by the parolee consenting to the search, the Fourth Amendment prohibited the warrantless search of the parolee's residence. The Court held that the Fourth Amendment does not permit the determination to conduct a search of a probationer or parolee to be left to the unfettered discretion of the individual officer. Rather, "some systemic procedural safeguards must be in place to guarantee those limited [F]ourth [A]mendment rights." *Id.* at 1098.

Appellant claims that in response to *Pickron*, the General Assembly enacted the search provision that is now found in Section 9912.[7] Appellant maintains that the provision pro-

---

7. Appellant provides no support for his claim that the General Assembly adopted the progenitor of Section 9912 in response to *Pickron*. Yet, both the timing of the adoption of the statute and the legislative history afford support for this undeveloped assertion. The General Assembly considered this provision in 1995, soon after *Pickron* was handed down. Additionally, comments on the floor of the House of Representatives indicated that the provision was adopted to provide the "statutory

vides the framework *Pickron* demanded for guiding a probation officer's decision to conduct a warrantless search, and a critical component of that guidance is that warrantless searches are permitted only when the probation officer has reasonable suspicion to believe that contraband or other evidence of a violation of the terms of probation will be found.

Appellant acknowledges that the general language of Section 9754(c), which is part of the Sentencing Code and addresses the specific conditions of probation that the court may impose, authorizes a trial court to require a probationer "[t]o satisfy any other conditions reasonably related to the rehabilitation of the defendant and not unduly restrictive of his liberty or incompatible with his freedom of conscience." *See* 42 Pa.C.S. § 9754(c)(13). Appellant reasons, however, that "[w]hile this section does allow for a broad range of possible conditions, nothing in it can be read to authorize trial courts to violate other statutory provisions." Appellant's Brief at 10.

The Commonwealth counters by echoing the reasoning in the OISA. It maintains that Section 9912 is directed only to the conduct of county probation officers who are acting independently, and has no bearing on the authority of sentencing judges. The Commonwealth asserts that Section 9912 simply provides a standard for agents in the field who are acting "independent[ly] of judicial guidance." Commonwealth's Brief at 20. The provision, the Commonwealth asserts, has no application to a trial court fashioning a probationary sentence. The Commonwealth contends that if the General Assembly had intended Section 9912 to circumscribe the trial court's authority to fashion probation search conditions, then it could have amended Section 9754, which was in existence when Section 9912's predecessor was promulgated, to make it clear that a sentencing court may not permit warrantless, suspicionless searches as a condition of probation.[8]

framework" mentioned in *Pickron*. *See* House of Representatives Journal, June 19, 1995, at 336 (comments of Rep. Wogan).

8. We note that the Commonwealth does not renew its argument—which was rejected by all judges on the *en banc* Superior Court panel—that this sentencing claim implicates the discretionary aspects of sentencing

The matter has been ably briefed, but we believe appellant clearly has the better of the arguments. The overarching principle of statutory construction is that the "intent of the Legislature is always our polestar when considering the interpretation and construction of statutes." *In re Paulmier*, 594 Pa. 433, 937 A.2d 364, 372 (2007), citing 1 Pa.C.S. § 1921(a). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *See* 1 Pa.C.S. § 1921(b). In this case, two provisions of Title 42 are at issue: Section 9912(d)(2) and Section 9754(c)(13). When a dispute implicates a general statutory provision and special one, we note that the Statutory Construction Act directs that

> the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

1 Pa.C.S. § 1933.

Section 9912(d)(2) is a specific provision addressing a narrow circumstance: the conditions under which a county probation officer may conduct a warrantless search, including a requirement that the probation officer must possess reasonable suspicion that the property contains contraband or other evidence of violations of the probationer's terms of probation. The provision is clear and unambiguous, and lists no exception, much less one tied to a trial court's probation order. The reasons for the restrictions, which were adopted in response to *Pickron*, are obvious: searches implicate constitutional rights (even though the Fourth Amendment rights of probationers are diminished), whether the search is specifically authorized by the judiciary or not.

The Commonwealth would have us read Section 9912 so that it has no application to orders of a sentencing court. The

only, and is waived because appellant did not preserve it in the trial court. We offer no view on that issue.

Commonwealth's position is that while a probation officer's unilateral decision to conduct a warrantless, suspicionless search would violate Section 9912, a court may authorize a probation officer to conduct those self-same prohibited searches. Essentially, the Commonwealth believes that the trial court has the authority to suspend Section 9912's application when the court sees fit. By this reasoning, only Section 9754 would have any application, and it could not be said that that section was in conflict with Section 9912.

We are not persuaded by this reasoning. We think it obvious that Section 9912's progenitor was adopted by the General Assembly with an eye to addressing the constitutional concerns identified in *Pickron,* and the policymaking branch responded by requiring a degree of suspicion before a warrantless probation search could be conducted—employing a term of art of specific meaning in search and seizure jurisprudence—and by requiring supervisory approval when a property search is at issue. It is true that *Pickron's* constitutional concerns were expressed by focusing on the otherwise unfettered discretion of probation officers, and did not speak of the judiciary's role. Still, the General Assembly's response specifically focused on searches by probation officers, adopted a reasonable suspicion requirement, and did not suggest an exception whereby a judicial officer could authorize a no-suspicion search by a probation officer. The General Assembly could well have been concerned that any suspicionless search conducted without the probationer's prior consent could pose a constitutional issue since an argument could be made (as one is by appellant here, in the alternative) that what is constitutionally impermissible for a governmental actor may not be rendered permissible simply by having the trial court authorize the suspect conduct.[9]

9. As we are deciding this appeal matter on the statutory claim, we will not reach the constitutional issue of whether a court may authorize random, suspicionless searches as a condition of probation. *See Fiori,* 673 A.2d at 909. Our discussion in text is not intended as an expression of view on the constitutional question; rather, we simply believe that the constitutional overlay (however the question may have been answered when the provision was adopted, or today) is probative of the plain meaning, intention, and reach of this statute.

Additionally, we do not read the Sentencing Code's catchall and generalized authorization of sentencing courts to impose probation conditions "reasonably related to the rehabilitation of the defendant and not unduly restrictive of his liberty" as establishing an exception to the later-adopted, explicit statutory restriction upon warrantless searches by probation officers. This provision does not specifically speak to issues of search and seizure—except insofar as it recognizes that the probationer maintains some measure of a liberty interest. If anything, the qualification of the Section 9754(c)(13) power—*i.e.*, that the reasonable conditions cannot be "unduly restrictive of liberty"—suggests the General Assembly's awareness that even probationers may retain a measure of privacy. And, that measure of privacy is explicitly addressed by the search restrictions in Section 9912(d)(2).

In short, both provisions guide and constrain a trial court in fashioning a sentencing order, and they easily coexist. It is untenable to read the provisions in a disharmonious fashion. We do not doubt that the fear of warrantless, suspicionless searches is an effective way of helping a probationer toe the line and rehabilitate himself. But, the statutory scheme, in both of the relevant iterations here, makes clear that there are other factors to consider as well.

■  Accordingly, we hold that, under this statutory construct, sentencing courts are not empowered to direct that a probation officer may conduct warrantless, suspicionless searches of a probationer as a condition of probation.[10]  Accordingly, as we find that the warrantless, suspicionless search probation condition violated Section 9912(d)(2), we vacate the order of the Superior Court to the extent that it found that this probation condition was permissible, and we remand to

10.  The *Pickron* Court also adverted to circumstances where the probationer agrees to the search condition, or where a statute authorizes the condition, but made clear that it was not saying that those circumstances, which were not before the Court, would survive constitutional scrutiny.  We likewise offer no view on such circumstances, which are not before us.

the trial court for resentencing in accordance with this decision.[11]

Jurisdiction relinquished.

Former Justice ORIE MELVIN did not participate in the decision of this case.

Justice SAYLOR, EAKIN and BAER and Justice TODD join the opinion.

McCAFFERY files a dissenting opinion.

## DISSENTING OPINION

Justice McCAFFERY.

I respectfully dissent. The majority does not consider the constitutional issue presented, but decides the matter purely under the principles of statutory interpretation, and determines that the court's sentencing order violates 42 Pa.C.S. § 9912(d)(2) because the order permits random, warrantless searches, without reasonable suspicion.[1] The majority appears to accept, *see* op. at 262–63 n.7, 264–67, 67 A.3d at 743 n. 7, 744–45, that Section 9912 was enacted by the legislature in response to *Commonwealth v. Pickron*, 535 Pa. 241, 634 A.2d

---

11. In his request for relief, appellant asks that if this Court were to find the probation condition invalid, we simply strike that condition from the sentence; he does not ask for a remand for resentencing. Merely striking the condition, without remanding for resentencing, would be improper. The trial court sentenced appellant on only one of the three charges of which he was convicted, and it made clear that it viewed the warrantless, suspicionless search condition of probation to be an integral part of its sentencing scheme. Our finding that this condition is invalid affects the landscape of options available to the court, and may affect the court's sentencing scheme; accordingly, the case must be remanded to the trial court. *See Commonwealth v. Goldhammer*, 512 Pa. 587, 517 A.2d 1280, 1283 (1986); *Scarpone v. Commonwealth*, 141 Pa.Cmwlth. 560, 596 A.2d 892, 896–97 (1991).

1. The statute at issue sets forth the supervisory relationship of probation and parole officers with offenders, and provides, in pertinent part, that "[a] property search may be conducted by an officer if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision." 42 Pa.C.S. § 9912(d)(2).

1093 (1993), wherein this Court held that Pennsylvania has no "statute or regulation" governing the conducting of warrantless searches of a probationer's or a parolee's residence, and that in the absence of some authority, such as a statute or regulation, or the consent of the individual owner of the residence to the search, warrantless searches violate a probationer's or a parolee's Fourth Amendment rights. *Id.* at 1097.[2]

I dissent because, in the years since *Pickron* was decided and the statute at issue was enacted, the United States Supreme Court has made clear that probationers and parolees do not have a Fourth Amendment right to be free from random, suspicionless searches conducted by supervising officers. *Samson v. California,* 547 U.S. 843, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006). In *Samson,* the United States Supreme Court upheld the constitutionality of a California statute that requires parolees to agree "to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause." *Id.* at 846, 126 S.Ct. 2193. The *Samson* Court noted that it had also previously upheld the constitutionality of a search conducted under the authority of a California statute requiring a probationer to agree to suspicionless searches. *Id.* at 848, 126 S.Ct. 2193 (citing *United States v. Knights,* 534 U.S. 112, 114, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001)). The *Samson* Court explained that because reasonable suspicion to search the probationer had existed in *Knights,* the *Knights* Court had not reached the issue of whether a suspicionless search would have been reasonable under the Fourth Amendment simply as a condition of probation, and that that was the issue to be addressed

2. No state constitutional issues were raised in *Pickron,* and thus, this Court decided the issue only under Fourth Amendment jurisprudence. Moreover, although *Pickron* concerned the search of a parolee's residence, its holding applied specifically to both parolees and probationers. *Pickron, supra* at 1098. This Court has recognized that "the constitutional rights of a parolee are indistinguishable from that of a probationer." *Commonwealth v. Williams,* 547 Pa. 577, 692 A.2d 1031, 1035 n. 7 (1997); *but see In the Interest of J.E.,* 594 Pa. 528, 937 A.2d 421, 427 n. 3 (2007) ("there is a marked difference between the rights of probationers and parolees").

in *Samson,* "albeit in the context of a parolee search." *Id.* at 850, 126 S.Ct. 2193. The High Court then balanced the state's substantial interests in promoting safety and reducing recidivism against the limited privacy rights of criminal offenders, and determined that suspicionless searches conducted as a condition of probation or parole are constitutional. *Id.* at 854–856, 126 S.Ct. 2193.

The majority here does not discuss the constitutional principles set forth in *Samson* or *Knights* because it renders its decision purely on the basis of statutory interpretation, concluding that a court order requiring random suspicionless searches as a condition of probation violates the plain meaning of Section 9912. The majority does so under its adherence to the principle that where constitutional and non-constitutional bases for relief exist, we attempt to resolve the matter on non-constitutional grounds. *See* Op. at 259–61, 67 A.3d at 741–42.

In my respectful view, this Court should not conduct statutory interpretation in a vacuum, or ignore the constitutional precepts of our High Court's Fourth Amendment jurisprudence that squarely impact the subject matter of the statute under review. The subject matter of the statutory provision at issue is the level of suspicion necessary to conduct a warrantless search of the property of a probationer or parolee. In determining the applicability of this provision, I believe that we should consider relevant, substantive constitutional precedent. I believe further that such consideration would lead to an opposite result here and to a determination that the trial court's order expressly making Appellant subject to random searches of his residence as a condition of probation, is constitutional and, thus, legal.

Indeed, if the statute under review here mandated that Appellant agree to suspicionless searches as a probationary condition, I suspect that a majority of this Court would conclude, on the basis of our High Court's controlling precedent, that the statute was constitutional. But because the mandate originated in a trial court's sentencing order, the legality of which Appellant challenges on a statutory basis, the majority does not consider relevant Fourth Amendment juris-

prudence, but engages only in statutory interpretation. The majority determines that the mandate is illegal because it violates what the majority perceives is language so restrictive as to be exclusive, to wit, that a warrantless search of a parolee or probationer only "may be conducted by an officer if there is reasonable suspicion." 42 Pa.C.S. § 9912(d)(2). I believe that, under settled constitutional precepts, a warrantless search may also be conducted by an officer simply as a court-ordered condition of probation or parole.[3] Accordingly, I respectfully dissent.

One of the assumptions underlying probation "is that the probationer is more likely than the ordinary citizen to violate the law." *Knights, supra* at 120, 122 S.Ct. 587. The High Court has "repeatedly acknowledged that a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment." *Samson, supra* at 853, 126 S.Ct. 2193. In furtherance of this responsibility, the states "do not have to ignore the reality of recidivism or suppress its interests 'in protecting potential victims of criminal enterprise' for fear of running afoul of the Fourth Amendment." *Id.* at 849, 126 S.Ct. 2193 (*quoting Knights, supra* at 121, 122 S.Ct. 587).

"The reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *Knights, supra* at 118–119, 122 S.Ct. 587 (*quoting Wyoming v. Houghton,* 526 U.S. 295, 300, 119 S.Ct. 1297, 143 L.Ed.2d 408, (1999)). "The touchstone of the Fourth Amendment is reasonableness, not individualized suspicion." *Sam-*

---

3. Although my discussion, *supra* and *infra*, focuses on the rights of probationers and parolees under Fourth Amendment jurisprudence, in my view, under the facts of this case, I believe there is no reason to articulate a different standard for the legality of the search under Article I, Section 8 of the Pennsylvania Constitution than under the Fourth Amendment, or to determine that the Pennsylvania Constitution affords probationers and parolees greater protection than the United States Constitution.

*son, supra* at 855 n. 4, 126 S.Ct. 2193. "Thus, while this Court's jurisprudence has often recognized that 'to accommodate public and private interests some quantum of individualized suspicion is usually a prerequisite to a constitutional search or seizure,' *United States v. Martinez–Fuerte*, 428 U.S. 543, 560, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976), we have also recognized that the 'Fourth Amendment imposes no irreducible requirement of such suspicion.' " *Id.* Requiring parolees or probationers to consent to random, suspicionless searches does not violate the Fourth Amendment. *Samson, supra* at 846, 126 S.Ct. 2193. Moreover, in light of a state's "earnest concerns respecting recidivism, public safety, and reintegration of parolees and probationers into productive society, and because the object of the Fourth Amendment is reasonableness," the decision that suspicionless searches of parolees and probationers is constitutionally permissible "is far from remarkable." *Id.* at 855 n. 4, 126 S.Ct. 2193.[4]

Here, the Superior Court's Opinion in Support of Affirmance ("OISA"), written by Judge Jack A. Panella, sheds considerable light upon the specific facts underlying this case that impact society's interests and concerns for public safety, recidivism, and the reintegration of offenders into productive society. *See Commonwealth v. Wilson*, 11 A.3d 519, 522–523 (detailing Appellant's criminal history, the history of Philadelphia Gun Court, and statistics with respect to gun violence in Philadelphia). Ultimately, the OISA determined that the probation condition authorizing suspicionless searches was "eminently reasonable" under the Fourth Amendment as

4. In *Samson*, the parolee had accepted the conditions of parole. The High Court expressly declined to rest its holding "on the consent rationale" and instead, decided the search was reasonable under its "general Fourth Amendment approach" of balancing the relevant factors. *Samson, supra* at 852 n. 3, 126 S.Ct. 2193. This Court has previously upheld the constitutionality of a warrantless search conducted as a condition of parole where the parolee expressly consented to the condition by signing a pre-release form authorizing same. *Williams, supra*. Whether Appellant consented to the probation condition does not appear to be an issue in the instant case. Although he did not challenge or object to the condition as explained to him by the court at the time of sentencing, he did challenge the legality of the condition on direct appeal.

"clearly tied to Wilson's rehabilitation and protection of the public." *Id.* at 526.

The OISA also considered, and rejected, Appellant's argument that the order was illegal because it violated the statutory provision requiring reasonable suspicion to search:

A plain reading of [Section 9912(d)(2) ] discloses that it pertains to searches made by probation officers acting on their own authority without judicial sanction. In this case, the trial court itself ordered the condition of random, warrantless searches expressly as a condition of probation. **As noted above, the condition imposed by the trial court comports with the protections offered by the United States and Pennsylvania Constitutions.** In no way does [Section 9912(d)(2) ] limit the authority of the trial court to impose, when appropriate, a condition of probation that the probationer be subjected to random, warrantless searches.

*Id.* at 527. (Original emphasis deleted, additional emphasis added).

The majority describes the above reasoning in the OISA as adopting a limited reading of the statute. *See* Op. at 253–54, 67 A.3d at 740. I respectfully disagree. In my view, the OISA considered the meaning of the statute in light of prevailing constitutional principles. I believe the majority's disposition here actually takes a myopic view, and essentially turns a blind eye to the clearly expressed constitutional principle that suspicionless searches of probationers and parolees does not offend the Fourth Amendment as expressed by our High Court in *Samson.*

Nevertheless, the majority expresses that the "constitutional overlay," i.e. the constitutional concerns raised in *Pickron,* are "probative of the plain meaning, intention, and reach of the statute." Op. at 265, 67 A.3d at 744. Our holding in *Pickron* was based on the reasoning that "there are no safeguards to protect the limited [F]ourth [A]mendment rights of probationers and parolees if their supervision is left entirely to the discretion of individual parole officers." *Id.* at 1098. In my view, the concerns this Court had in *Pickron* for the

safeguarding of those very limited Fourth Amendment rights against the unsupervised and unfettered discretion of probation and parole officers do not exist in the present case. Here, as the OISA ably explained, the authority for the warrantless search is an express provision contained in the sentencing order of the court that has the ultimate supervisory authority over the offender. Moreover, under Section 9754(c)(13) of the Sentencing Code, the sentencing court has the broad authority to require a probationer to satisfy **any** condition reasonably related to his or her rehabilitation that is not unduly restrictive of his or her liberty. 42 Pa.C.S. § 9754(c)(13). In my respectful view, that authority would include warrantless, random searches for weapons as a condition of probation for a convicted recidivist firearms offender. *See Samson, supra.*

Thus, unlike the majority, I would not reconcile any conflict between Sections 9754 and 9912 regarding a probationer's Fourth Amendment rights purely under the principles of statutory interpretation. In light of *Samson*, I would apply settled constitutional precedent to conclude that generally requiring a probationer or parolee to agree to submit to random, suspicionless searches as a condition of probation is constitutional and legal, and specifically that a sentencing order requiring warrantless, random, suspicionless searches for weapons as a condition of probation upon a recidivist gun offender does not offend the Fourth Amendment. Accordingly, I respectfully dissent.[5]

---

5. Nevertheless, I note my agreement with the majority's determination that striking the random search condition from the sentencing order must result in a remand for resentencing to permit the court to fashion an appropriate sentence for Appellant's multiple weapon and drug convictions. *See* Op. at 267 n.11, 67 A.3d at 745 n. 11.