# [J-82-2022]
# IN THE SUPREME COURT OF PENNSYLVANIA
# MIDDLE DISTRICT

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 23 MAP 2022 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court dated August 27, |
| | : | 2021 at No. 1287 MDA 2020 |
| v. | : | Vacating the Judgment of Sentence |
| | : | of the Sullivan County Court of |
| | : | Common Pleas, Criminal Division, |
| ZACHARY CLAYTON CAPRIOTTI, | : | dated September 1, 2020 at No. |
| | : | CP-57-CR-0000021-2019 and |
| Appellant | : | Remanding |
| | : | |
| | : | ARGUED:  November 30, 2022 |

## DISSENTING STATEMENT

**JUSTICE DONOHUE**                                    **FILED:  January 10, 2023**

I join Justice Wecht's Dissenting Statement.  We granted Zachary Capriotti's petition for allowance of appeal to answer an important and novel constitutional question regarding the Superior Court's expansive application of the silver platter and/or private search doctrines in circumstances that strain any connection to the underlying rationale of those exceptions to the warrant requirement.[1]  I perceive no reason why we should not decide this case.  I would also reach the merits of Capriotti's claim today and reverse the

---

[1] As Justice Wecht aptly notes, the facts of this case are "categorically different" from the typical silver-platter or private-search doctrine case, wherein contraband is delivered to police by a private party on a proverbial silver platter.  Justice Wecht's Dissenting Statement at 19 ("Wecht Dissenting Statement").  Here, Pennsylvania State Police Officer Curtis Benjamin ("Trooper Benjamin") was delivered to the contraband, by traversing constitutionally protected space without a warrant, and absent any applicable exception to the warrant requirement.

judgment of the Superior Court for the reasons set forth in Justice Wecht's Dissenting Statement.

I write separately to offer my additional perspective as to why this appeal was not improvidently granted. Orders of this Court dismissing appeals as improvidently granted are opaque and cause speculation by the bench and bar as to the reason for avoiding disposition of fully briefed and argued cases. Ordinarily, in such cases there are some facts or set of facts or some procedural irregularity (most often waiver) that present an impediment to our resolution of the important issue upon which we granted allowance of appeal.

Central to the viability of Capriotti's objection to the application of any exception to the warrant requirement is the existence of his privacy interest in the searched premises. If he lacked such an interest or his privacy interest was diminished or he failed to assert a privacy interest, the propriety of the application of the private search doctrine or the silver platter exception would necessarily escape our review. None of these impediments infect this case.

Capriotti has consistently maintained at every stage of the proceedings in this case, without exception, that he had a reasonable expectation of privacy in the apartment when Trooper Benjamin accompanied Capriotti's father to the location where the contraband was found. In his suppression motion, Capriotti asserted that he had a "possessory interest" in the "entire property" that was protected under both the Fourth Amendment and Article 1, Section 8 of the Pennsylvania Constitution. Motion to Suppress, 5/22/2019, ¶¶ 14-15. He claimed that his parents had no right to be on the property and, therefore, no "authority to let the police search protected areas of the

building … ." *Id.* ¶ 14. Capriotti argued that his parents were trespassing on the date of the search, *id.* ¶ 16, that he was still "sleeping and living in that apartment[,]" that day, and that his father had "no right to search the upstairs apartment where" Capriotti resided, *id.* ¶ 22. Capriotti filed an omnibus post-sentence motion raising, inter alia, a challenge to the trial court's denial of his suppression motion. Despite having no knowledge as to why the court had denied it (because the trial court never issued findings of fact and conclusions of law), Capriotti challenged the decision, arguing that a search warrant was required in the circumstances of this case. Specifically, he asserted that the court erred by "allowing the prosecution to rely on the silver platter doctrine," and that no "exception to the search warrant requirement applied because [Capriotti] had **an exclusive possessory interest** as the properties searched were leased to him, there were no exigent circumstances, and the [t]roopers partook in the search." Post-Sentence Motion, 9/9/2020, at 2, ¶ 6 (emphasis added).

Capriotti preserved the issue in his Pa.R.A.P. 1925(b) statement, *see* Rule 1925(b) Statement, 10/16/2020, at 1, ¶ 2, in his Superior Court brief, *see* Capriotti's Superior Court Brief at 26, 31-32, in his petition for allowance of appeal, *see* Petition for Allowance of Appeal at 8, and he did not waver from this position in his brief to this Court, *see* Capriotti's Brief at 9. Thus, Capriotti preserved the assertion of his privacy interest in the apartment.[2]

---

[2] Moreover, as explained by Justice Wecht, the evidence produced at the suppression hearing conclusively supported that Capriotti had a privacy interest in the apartment on the day in question in his capacity as a de facto tenant pursuant to an oral lease or, if not as a tenant, as an occupant of the apartment. *See* Wecht Dissenting Statement at 11 (explaining that it was Capriotti's "subjective expectation of privacy, not his precise legal relationship to the property" that is dispositive under the Fourth Amendment); *see also id.* at 21-22 (demonstrating that, regardless, the facts from the suppression hearing showed that Capriotti was effectively a tenant).

Although the trial court never made the legal conclusion that Capriotti abandoned his privacy interest in the apartment,[3] the issue lurked in the background. In its opinion, the trial court stated that Capriotti "vacated the apartment approximately one (1) week prior to the incident." Trial Court Opinion, 11/30/20, at 5. As noted by Justice Wecht, the trial court made no attempt to justify this statement by citation to the record and nothing in the record could support that factual finding. Wecht's Dissenting Statement at 11 n.25. Nevertheless, Capriotti consistently challenged the finding that he had vacated the apartment at every stage of proceedings from the time that the trial court first made it in response to Capriotti's post-sentence motion. In his Rule 1925(b) statement, Capriotti refuted that finding by reasserting that he did, in fact, have "a right of privacy in … his apartment," a claim wholly inconsistent with the notion of abandonment ostensibly implied by the trial court's finding that he had vacated the apartment prior to the incident. Rule 1925(b) Statement at 1, ¶ 2. In his brief to the Superior Court, he repeatedly maintained

---

[3] "[T]o prevail on a suppression motion, a defendant must demonstrate a legitimate expectation of privacy in the area searched or effects seized, and such expectation cannot be established where a defendant has meaningfully abdicated his control, ownership or possessory interest." *Commonwealth v. Dowds*, 761 A.2d 1125, 1131 (Pa. 2000) (citing *Commonwealth v. Hawkins*, 718 A.2d 265, 267 (Pa. 1998)). "Significantly, abandonment of a privacy interest is primarily a question of intent and may be inferred from words spoken, acts done, and other objective facts." *Id.* (citing *Commonwealth v. Shoatz*, 366 A.2d 1216, 1220 (Pa. 1976)). I would conclude that the trial court did not make a ruling premised on abandonment, given that it never used that legal term of art, but instead used the term "vacated," which fails to encompass the primary question in abandonment jurisprudence, which is a matter of intent, not one of mere spatial presence in the location searched. *See id.* at 1131. Moreover, while the trial court cited case law related to the silver platter and private search doctrines in its opinion, it cited no authorities concerning abandonment. The court concluded the second phase of its analysis (regarding the discovery of the contraband in the apartment) by invoking the silver platter doctrine (citing *Commonwealth v. Borecky*, 419 A.2d 753 (Pa. Super. 1980)), making no mention or reference to its prior statement about Capriotti's vacating the apartment.

that he did not abandon the apartment. Capriotti's Superior Court Brief at 31, 33.[4] Likewise, Capriotti challenged the trial court's factual finding in his Petition for Allowance of Appeal, Petition for Allowance of Appeal at 8 (noting "uncontradicted evidence" during the suppression hearing "that [Capriotti] was still occupying the upstairs apartment and that he had not yet vacated the premises"), and in his brief to this Court, Capriotti's Brief at 15 ("There was no evidence that [Capriotti] ever abandoned the apartment."). It is

---

[4] In its brief to the Superior Court, the Commonwealth baldly asserted that: "The testimony and evidence provided **at trial** showed that the [Capriotti] had vacated the building and that [any] proprietary interest belonged solely to the owners of the real estate." Commonwealth's Superior Court Brief at 8 (emphasis added). The Commonwealth provided no citations to the record to support its assertion nor any accompanying legal analysis. Indeed, on its face, the Commonwealth's argument was meaningless, as an appellate court's "scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial." *Commonwealth v. Yandamuri*, 159 A.3d 503, 516 (Pa. 2017). Even so, there is also nothing in the record from Capriotti's trial that would support the wholly unfounded assertion that Capriotti had "vacated," much less "abandoned" the apartment, if the trial transcripts fell within our scope of review. The trial court record shows the opposite. For instance, Capriotti's father testified at trial that, when he asked police to search Capriotti's apartment, the police refused to conduct a comprehensive search (beyond a brief safety sweep), telling Capriotti's father that they "didn't have a legal right" to do so, ostensibly because police well-understood at that time that Capriotti retained at least some privacy interest in the apartment, his home, and had not vacated or abandoned it. N.T., 11/3/2020, at 77. Later, Capriotti's father agreed that his son was "[n]ever" locked out of the apartment, and that when he heard footsteps from the apartment stairwell on the day of the incident, he assumed it was Capriotti. *Id.* at 82. Capriotti's mother also testified at trial that Capriotti was "[n]ever" locked out of the apartment. *Id.* at 44. She further stated that she and her husband "made sure that [Capriotti] had a key so that he could come in and out of the apartment as he needed … ." *Id.* Not only does the trial record fail to support the Commonwealth's assertions that Capriotti had abandoned his privacy interest in the apartment, but it also directly refutes that claim.

patently clear that Capriotti had consistently challenged the trial court's factual finding that he had vacated the apartment prior to the contested search.[5],[6]

As recognized in our grant of allowance of appeal,[7] if the Commonwealth established that Capriotti's father possessed either the actual or apparent authority to consent to Trooper Benjamin's search of the apartment, the warrant requirement would not have applied. However, neither the trial court nor the Superior Court ever discussed authority to consent or apparent authority to consent, relying instead on the silver platter and/or private search doctrines, which are wholly inapplicable if Capriotti's father possessed the actual or apparent authority to authorize Trooper Benjamin's warrantless intrusion. Nevertheless, Capriotti consistently maintained that his father had no such authority to consent to a search. As noted by Justice Wecht, no such authority could legally stem from Capriotti's relationship to his father or his father's role as a landlord, nor do any other facts ascertainable from the suppression hearing suggest that Trooper Benjamin could have reasonably believed that Capriotti's father had the apparent

[5] Moreover, as detailed by Justice Wecht, the record utterly fails to support the trial court's factual finding that Capriotti vacated the apartment. *See* Wecht Dissenting Statement at 10-11.

[6] I further note that the Commonwealth effectively conceded that Capriotti had a privacy interest in the apartment, stating: "The Commonwealth is not suggesting that [Capriotti] had no expectation of privacy in his son's room [where the contraband was found], just that in the circumstances of this case **that expectation was limited**." Commonwealth's Brief at 17 n.11 (emphasis added).

[7] In granting Capriotti's petition for allowance of appeal, we stated: "This question necessarily implicates the legality of the non-occupant's invitation, which the parties should address factually and legally, as they have in the courts below." *Commonwealth v. Capriotti*, 273 A.3d 510 (Pa. 2022) (per curiam).

authority to consent to a search of Capriotti's private residence. *See* Wecht Dissenting Statement at 22.

With respect to the father's authority to consent, neither the trial court nor the Superior Court concluded that an exigency exception to the warrant requirement applied in this case. Indeed, exigency was only vaguely suggested by the facts testified to at the suppression hearing in that the contraband was discovered inside Capriotti's son's bedroom closet, presumably thereby creating a safety concern. The Commonwealth sporadically and unconvincingly argues[8] that this fact supported a legal conclusion that was never made by any lower court – that the risk to the child created an exigency, justifying a warrantless search. However, I fully agree with Justice Wecht that, if there was a concern for Capriotti's son, either Trooper Benjamin or Capriotti's father "could have secured the apartment against entry by Capriotti's son (or anyone else) while troopers obtained a search warrant." Wecht Dissenting Statement at 22. The Commonwealth never made any attempt to demonstrate that temporarily securing the premises was unfeasible, nor does the record independently reveal such a reason.

Finally, it was uncontested throughout the proceedings in this case that Capriotti was on parole at the time of the search, thus, under certain circumstances, he had a diminished expectation of privacy. However, any theory that Trooper Benjamin was permitted to dispense with the warrant requirement because of that status would require

---

[8] The Commonwealth's Brief does not set forth exigency as an independent justification for the warrantless search, and instead occasionally references Capriotti's father's concern for his grandson due to the presence of the contraband. However, the Commonwealth did aver that exigent circumstances existed in its answer to Capriotti's suppression motion (although it did not explain the nature of that exigency). Commonwealth's Answer, 5/30/2019, ¶ 10.

a total revamping of the applicable law governing warrantless searches of homes of parolees. The home of a parolee or probationer, "like anyone else's, is protected by the Fourth Amendment's requirement that searches be 'reasonable.'" *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987). A warrant is generally required to satisfy the Fourth Amendment's reasonableness standard, however, the United States Supreme Court has "permitted exceptions when 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.'" *Id.* (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 351 (1985) (Blackmun, J., concurring in judgment)). The *Griffin* Court held that a warrantless search of a parolee or probationer's home satisfies the Fourth Amendment if "it was carried out **pursuant to a regulation** that itself satisfies the Fourth Amendment's reasonableness requirement under well-established principles." *Id.* (emphasis added). The absence of regulatory framework governing warrantless searches of a probationer's or parolee's residence is a critical factor in determining whether such searches are reasonable under the Fourth Amendment, as this Court held in *Commonwealth v. Pickron*, 634 A.2d 1093, 1098 (Pa. 1993) (holding that "in the context of a probationer or parolee's limited [F]ourth [A]mendment rights, some systemic procedural safeguards must be in place to guarantee those limited fourth amendment rights"). In *Commonwealth v. Wilson*, 67 A.3d 736 (Pa. 2013), this Court recognized that, in Pennsylvania, 42 Pa.C.S. § 9912 governs the relationship between parole/probation officers and parolees/probationers, noting that "Section 9912's progenitor was adopted by the General Assembly with an eye to addressing the constitutional concerns identified in *Pickron*[.]" *Wilson*, 67 A.3d at 744.

Pertinent here, Section 9912(b)(1) provides that "[o]fficers and, where they are responsible for the supervision of county offenders, State parole agents may search the person and property of offenders in accordance with the provisions of this section." 42 Pa.C.S. § 9912(b)(1). Section 9912(d)(2) provides that probation/parole officers may conduct a property search "if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision." 42 Pa.C.S. § 9912(d)(2). However, Section 9911 defines "Officer" as follows: "A probation or parole officer appointed or employed by any court or by any county department of probation and parole to supervise persons released on county probation or parole." 42 Pa.C.S. § 9911 ("Definitions"). Conspicuously absent from this definition are police officers or state troopers. Because no "officers" within the meaning of Section 9912(d)(2) participated or accompanied Trooper Benjamin during his intrusion into Capriotti's apartment, it is patently clear that Trooper Benjamin's failure to obtain a warrant was not permitted under *Griffin*'s "special needs" exception the Fourth Amendment, because the search fell outside the regulatory framework that permits that exception.[9]

Nevertheless, neither the trial court nor the Superior Court ruled that the Capriotti's status as a parolee justified the warrantless intrusion into his apartment under the pretext

---

[9] Assuming that we were to ignore the express statutory definition of an officer under the statute, Trooper Benjamin's actions would still not be authorized under Section 9912, because subsection (d)(3) further provides that "[p]rior approval of a supervisor **shall** be obtained for a property search absent exigent circumstances." 42 Pa.C.S. § 9912(d)(3) (emphasis added). Thus, absent exigency (which is not an issue in this case as discussed above), Section 9912(d)(3) requires prior approval by a supervisor for any property search undertaken under the auspices of probation and parole regulations, and there is no indication in the record that Trooper Benjamin ever sought prior approval from any supervisors before he transgressed into Capriotti's apartment without a warrant.

of the enforcement of parole regulations. While the Commonwealth had no burden to preserve such an issue, it has never argued the applicability of the *Griffin* exception to the warrant requirement at any stage in this case. Indeed, the Commonwealth briefly mentions *Griffin* for the first time in its brief to this court, yet it tacitly concedes the inapplicability of the *Griffin* exception, reasoning that "**if** parole officers had entered, the seizure **would have been** permissible." Commonwealth's Brief at 25 (emphasis added).

**Conclusion**

In sum, this appeal is ripe for decision by this Court. Dismissing this appeal as improvidently granted is, to me, unsupported given the gravity of the Fourth Amendment implications of the Superior Court's expansion of the silver platter doctrine[10] and the lack of any discernable basis for avoiding the question we accepted for review. I respectfully dissent.

Justice Wecht joins this dissenting statement.

---

[10] I note that unpublished, non-precedential memorandum decisions issued by the Superior Court after May 1, 2019 "may be cited for their persuasive value." Pa.R.A.P. 126(b)(2).