J-S91035-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANN LOUISE GRUBER | : | |
| | : | |
| Appellant | : | No. 475 MDA 2016 |

Appeal from the Judgment of Sentence February 17, 2016
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s):  CP-38-CR-0000887-2015,
CP-38-CR-0002024-2015


BEFORE:  FORD ELLIOTT, P.J.E., RANSOM, J., and STEVENS[*], P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                 **FILED JANUARY 13, 2017**

Appellant Ann Louise Gruber appeals from the judgment of sentence entered in the Court of Common Pleas of Lebanon County on February 17, 2016, at which time she received an aggregate eighteen (18) month nonreporting probationary sentence.[1]  Upon our review of the record, we affirm.

---

[1] In light of the unusual nature of this matter, which shall be discussed *infra*, and the trial court's finding that Appellant did not pose any danger to society aside from her threat to the decorum of meetings conducted by the Board of Supervisors of Jackson Township, the trial court directed that her probation be nonsupervised.  As such, Appellant was not assigned a probation officer and was not directed to comply with all of the rules governing probation.  In addition, a specific condition of Appellant's probation required that she
*(Footnote Continued Next Page)*

[*] Former Justice specially assigned to the Superior Court.

The trial court aptly detailed the procedural and factual history herein as follows:

## I.    PROCEDURAL BACKGROUND

Charges regarding [Appellant's] conduct were filed to two separate dockets. The first criminal complaint was filed on March 9, 2015 and set forth charges against [Appellant] for Disruption of a Public Meeting and Disorderly Conduct- Unreasonable Noise. It was alleged in the Complaint that [Appellant's] behavior at a Jackson Township Supervisors Meeting on January 5, 2015 was disruptive and inappropriate and that such behavior prevented the township from conducting its business. The second set of charges were filed on October 19, 2015. These charges allege that [Appellant] entered a private area of the Jackson Township Municipal Building without permission and created a disturbance at that location.

After both sets of charges were bound over to the Court of Common Pleas, the Commonwealth sought to have the charges consolidated. After a hearing that occurred on November 25, 2015, this [c]ourt ordered the consolidation of both dockets lodged against [Appellant].

On December 4, 2015, the Commonwealth filed a Motion for Trial on a Date Certain. The [c]ourt granted the Commonwealth's Motion and trial was scheduled for December 16 and 17 of 2015. After hearing all of the testimony and evidence presented on those dates, the jury returned a verdict of guilty on all counts.

Sentencing was conducted on February 16, 2016. This [c]ourt imposed a sentence of 18 months of unsupervised probation on both docket numbers. As a special condition, [Appellant] was given the ability to submit to Township Solicitor

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯

refrain from attending any meetings of the Jackson Township supervisors so long as she is permitted to send a letter of seven hundred fifty (750) words or less at least five days prior to each meeting to Paul Bametzreider, the Jackson Township solicitor. Attorney Bametzreider shall ensure the correspondence is read at the public portion comment of all meetings to the extent it relates to legitimate Township business.   N.T. Sentencing, 21/17/16, at 34-35.

Paul Bametzreider, Esquire, a letter of 750 words or less at least 5 days prior to each township meeting. As long as [Appellant's] letter related to legitimate business of the township, Attorney Bametzreider was to ensure that it be read at the public comment portion of all Jackson Township meetings. If this was accomplished, [Appellant] would not be permitted to attend any meeting of the Jackson Township Supervisors or any meeting of any governing body appointed by the Jackson Township Supervisors to conduct business with Jackson Township.

[Appellant] hired new counsel. On March 16, 2016, Vincent J Quinn, Esquire filed a, Notice of Appeal on behalf of [Appellant]. Simultaneously with the filing of the Notice of Appeal, [Appellant] also filed a Motion for Extension of Time to file her Statement of Errors Complained of on Appeal pending completion of a trial transcript. The [c]ourt granted said Motion.

[Appellant] filed *pro se* Post Sentence Motions on March 18, 2016. As a result of [Appellant's] *pro se* motion, a ***Grazier*** hearing was scheduled for April 20, 2016. During the ***Grazier*** hearing, [Appellant] withdrew her Post Sentence Motions. She chose to have Attorney Quinn continue his representation of her.

On May 25, 2016, [Appellant] filed her Concise Statement of Errors Complained of on Appeal challenging the weight and sufficiency of the evidence. She also complained about an evidentiary ruling we made regarding a prior court proceeding. Finally, she objected to a sentencing condition we imposed that prevented [Appellant] from attending Jackson Township meetings.

## II. STATEMENT OF FACTS

Jackson Township is a Lebanon County municipality located in Eastern Lebanon County. According to local records, the Township has a population of 8,163 as of 2010. It is governed by an elected Board of three supervisors.

Paul Bametzreider, Esquire (hereafter "BAMETZREIDER") is and has been the Solicitor of Jackson Township since 1989. He attends monthly Supervisors meetings. During these meetings, bills are paid and official decisions are made. The function of the Board Chairman is to preside over the meetings, recognize people to speak and basically move the Board's agenda forward in an efficient manner. (Trial N.T. 28). Notice of the meetings must be published in the newspaper in order to let the public know that a meeting will be conducted that citizens may wish to attend. (Trial N.T. 30).

During the meetings, time is set aside for public comment. This allows residents and taxpayers of the township to address the Board regarding matters which are currently at issue. In Jackson Township, the time limit for each public comment is four minutes. Depending on whether the matter is relevant to Township business, the Chairman has the discretion to choose not to hear the comments or extend or shorten the time frame for each public comment. (Trial N.T.31 -32). If someone asks questions during the meeting that are redundant or repetitive or impertinent, the Chair does not have to answer them. (Trial N.T. 49).

Dean Moyer has been a Township Supervisor for 36 years. (Trial N.T. 52). He testified that [Appellant] started attending meetings sometime in 2011. (Trial N.T. 38; 52). [Appellant] constantly questioned the Supervisors as to why they reached certain decisions. If her questions were not answered in a way she wanted them answered, she would become loud and boisterous. (Trial N.T. 54). [Appellant] approached Mr. Moyer about building a community building on a lot that was just purchased by Jackson Township. When nothing came of [Appellant's] request, her behavior at the meetings gradually changed. (Trial N.T.57).

At trial, a video of the February 18 public meeting was played. In that video, [Appellant] approached the Supervisors table and sat down. (Trial N.T. 63; 200). Mr. Moyer testified the protocol is for the person speaking to sit at their table or stand at their chair and not move out and walk all over the place and make comments to people or make comments about the meeting. (Trial N.T. 63). By way of a letter authored by Solicitor Bametzreider dated February 27, 2014, [Appellant] was advised of parameters for conduct at the meetings. The letter also indicated that [Appellant] was not permitted to enter the Jackson Township Offices unless invited to do so. (Trial N.T. 112-113; 124; 128.)

Videos of public meetings were played for the jury. (See, e.g., N.T. 112 re 4/21/14 meeting and N.T. 113 re 8/17/14 meeting.) These videos depicted the manner and tone of [Appellant's] voice, and actions. The August 17, 2014 video depicted what occurred after the supervisors' meeting when [Appellant] attempted to go into the Supervisors' office without permission. (Trial N.T. 139 -140.)

A video of the January 5, 2015 meeting was also played for the jury. This was the video that dealt with the charges brought against [Appellant] for disruption of a public meeting.

- 4 -

(See N.T. 132-133; Exh. 6.) This meeting was adjourned early due to the behavior of [Appellant]. When public comment was called for, [Appellant] started her comment by shouting . . . "hear ye, hear ye, all citizens of Jackson Township." Thereafter, [Appellant] so disrupted the meeting that legitimate business could not be conducted. (Trial N.T. 135-137; 268.)

Trooper John Huffstutler is a member of Troop L of the Pennsylvania State Police. He was dispatched to the Jackson Township Building on February 18, 2013 as a result of a report of a disturbance at the Township meeting. Upon arrival at the Township building, Tpr. Huffstutler interviewed Township Supervisors, Zoning Officer Gene Meade and various audience members. All indicated that [Appellant] was disruptive. Tpr. Huffstutler did not file charges but instructed [Appellant] to change her mannerisms. (Trial N.T. 70-73).

Sergeant Mark Tice is also employed by the Pennsylvania State Police. Part of Sgt. Tice's job requires him to attend township meetings in Lebanon County where the State Police provides primary coverage. (Trial N.T. 90). Sgt. Tice's first involvement with [Appellant] was when he attended a meeting in January of 2013. At some point after the February 18 hearing, Sgt. Tice recalled having an informal meeting with [Appellant] about meetings and behavior. During this meeting, he provided [Appellant] with a copy of the Pennsylvania Crimes Code that referenced Disruption of Public Meetings and Disorderly Conduct and also some paperwork dealing with case law. (Trial N.T. 90-91). Sgt. Tice was dispatched to the Jackson Township Building on May 20, 2013. He indicated that upon his arrival, the meeting had been placed in recess and that people were talking back and forth in a second smaller conference room. (Trial N.T. 92). Sgt. Tice proceeded to speak with Chairman Tom Houtz and Bametzreider to find out what had taken place. (Trial N.T. 93). Upon entering the meeting room, the first person Sgt. Tice heard was [Appellant]. After allowing [Appellant] to finish her conversation with someone, he asked her to step out of the room. (Trial N.T. 94). Sgt. Tice explained to [Appellant] that the Supervisors had made a request that she be removed from the meeting as she was being so disruptive that business could not be conducted. [Appellant] told Sgt. Tice that she wished to go back into the room to obtain witnesses for her defense and that she was not the one being disruptive. [Appellant] became loud in the vestibule, and Sgt. Tice asked her to step outside in the parking lot. Even though Sgt. Tice told [Appellant] that she was not permitted to go back into the meeting, [Appellant] persisted

in her effort to be disruptive. Sgt. Tice therefore placed [Appellant] under arrest and removed her from the meeting. (Trial N.T. 95-98).

[Appellant] hired Attorney Scott L. Grenoble, Esquire to represent her. On September 17, 2013, a meeting was conducted at the law firm of Buzgon Davis. Present at this meeting were Attorney Grenoble, [Appellant], Chairman Tom Houtz and Bametzreider. [Appellant's] behavior was discussed and she was provided with documentation from her attorney indicating that if she persisted in disrupting meetings, criminal charges could result. (Exh. 2; Trial N.T. 99; 104 -105; 235-236.)

Sgt. Tice was again dispatched to the Jackson Township Building on April 21, 2014 due to an alleged disruption of their meeting by [Appellant] (Trial N.T. 102.) After viewing a video from that date, Sgt. Tice declined to file charges. (Trial N.T. 103.)

Trooper Noll was also dispatched to the Jackson Township Building on January 5, 2015 for a reported disturbance. Upon his arrival, the meeting had already been adjourned. There were people outside of the entrance and some people were inside the front door in a waiting area. The front door to the building was locked. Tom Houtz and several other people indicated that [Appellant] had gone too far and that her actions caused the meeting to be adjourned. (Trial N.T. 147-149; 180-181; 257). Upon interviewing various people, Trp. Noll learned that [Appellant] had forced her way into the supervisors' office. (Trial N.T. 157). Trp. Noll testified that one of the charges related to the January 5, 2015 [sic] involved very loud unreasonable noise or yelling by [Appellant]. (Trial N.T. 154).

Trooper Justin Summa of the Pennsylvania State Police testified that he was completing paperwork in the parking lot of the Jackson Township on August 17. [Appellant] approached him. She seemed irate at what was happening. She told Trp. Summa that he would be receiving a call about her actions after the township meeting had adjourned. (Trial N.T. 158). Trp. Summa learned that Bametzreider and Supervisor Deck had walked back to the supervisors' office in order to discuss something privately and that [Appellant] had followed them. As the supervisors were attempting to close the door to the office, [Appellant] was standing on the threshold of the door. [Appellant] was told that the meeting was a private one and that she was not allowed to enter. [Appellant] became very upset and entered the room while yelling at the supervisors. (Trial N.T. 165-166; 170-171; 175-176; 208-209; 243).

During the course of the trial, a tape was played from a public meeting during which [Appellant] made reference to a court proceeding that she won. Thereafter, Bametzreider replied "no you did not." A dispute exists about the type of hearing that was being referenced. We were told by counsel that two court proceedings pertaining to [Appellant] had been adjudicated prior to the meeting in question. One was a civil proceeding that was resolved in favor of [Appellant], and another involved a summary offense where [Appellant] was found guilty. Apparently, yet another dispute was addressed at an informal mediation process brokered by [Appellant's] then-attorney, Scott Grenoble. At trial, both [Appellant] and the Commonwealth wanted to present evidence about the nature of the court proceedings; [Appellant] wanted to prove that the civil dispute was resolved in her favor to support her claim that "I won" and the Commonwealth wanted to present evidence of the other proceeding to corroborate Bametzreider's statement, "no, that is not right."

At trial, [Appellant's] counsel sought to admit testimony regarding the proceeding that was resolved in [Appellant's] behavior [sic]. The Commonwealth objected. We ultimately ruled that if one side wished to present evidence regarding one prior proceeding, then the other side would be permitted to present evidence regarding the other prior proceeding. Based upon that ruling, [Appellant] chose not to enter that arena of inquiry.

Because [Appellant] raised her First Amendment right of free speech as a defense to the charges, we instructed the jury about that right. We afforded the following instruction:

> I want to talk a little bit now about the First Amendment and the right of all citizens to free speech. Not surprisingly to me, the defense attorney emphasized in his closing argument the concepts of free speech. The prosecutor emphasized in her closing arguments the need for decorum in a public meeting.
>
> There is a tension between free speech and the need for decorum in a public meeting. There is a tension between those concepts.
>
> John Adams, as part of the Constitutional Convention of 1787, described juries as the conscience of the community. That is what you are. That is why you are here. In some ways you are going to have to decide, given the facts of this case, whether this is something where free speech is

- 7 -

elevated over decorum, or whether decorum is elevated over free speech. That is going to be your call.

Let me tell you a little bit about both concepts. Every one of us was taught in Civics class all Americans enjoy a right to free speech protected by the First Amendment of the United States Constitution.

Every single one of us may express opinions without fear of being arrested because someone else may disagree with our opinion. That is part of the First Amendment. That is part of our right as American citizens.

The United States Supreme Court has described the right of free speech with the following language: A function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it creates dissatisfaction with conditions as they are, or even stirs people to anger. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea.

That is why freedom of speech though not absolute, is protected against censorship or punishment. There is no room under our constitution for a more restrictive view, for the alternative would lead to standardization of ideas either by Legislatures, courts or dominate political or community groups.

As a very general proposition, no one can be convicted if [sic] a crime simply because they were exercising their First Amendment right of free speech.

With that being said, and with that being recognized, the right of free speech is not absolute.

The law recognizes that some speech, such as a threat of violence, can actually harm other people. Other speech such as yelling "fire" in a crowded auditorium can create a risk of harm for the public. Recently Pennsylvania (sic) highest court ruled that schools are able to expel students or [sic] make text or create a website that is threatening to teachers and other students in that school.

With respect to public meetings conducted by elected officials, individuals enjoy a right of free speech, but it is not absolute.

Citizens have a right to be present at a public meeting. They have a right to communicate opinions. However, reasonable restriction can be imposed on this right.

Once again, in 2009 the United States Supreme Court declared elected officials may impose restrictions on speech provided they are reasonable and viewpoint neutral.

In particular, the law permits governmental entities to impose rules governing public comment. Those rules can limit the manner of comment and the duration of comment.

Our courts have even determined that when an individual violates the rules that govern a public meeting in terms of reasonableness and duration of comments, they can then be ejected from that meeting.

Let me summarize: We all have a right to free speech. It's an important right that we enjoy as Americans. You cannot be punished for the content of our opinions. However, the right of free speech is not absolute. With respect to a public meeting, elected officials cannot prevent public comment. They cannot edit its contents, but the[y] can impose reasonable limits. Those reasonable limits can include the duration of comment so long as those limits are, "viewpoint neutral."

If [Appellant's] conduct in this case violates the rules imposed on the manner and duration of public comment, and if [Appellant's] behavior fits all of the elements of the offenses as I have outlined them for you, then you can find [Appellant] guilty.

On the other hand, if you find that [Appellant] was asserting her First Amendment right of free speech in a manner that comported with the rules established by the governmental entity, or if you find that the rules established by the public entity infringed on her right to provide reasonable comment, or were designed to censor a particular viewpoint, then you can find that her First Amendment right of free speech was violated. If you so find, the Defendant cannot be convicted.

No objection was proffered by [Appellant] to the charge as outlined above. (Trial N.T. 399). Based upon those instructions, based upon the testimony and evidence presented, and based upon the videotapes that were played in open court, the jury determined that [Appellant] was guilty of all charges.

Trial Court Opinion, filed 6/23/16, at 1-12.

In her brief, Appellant presents the following Statement of Question[s] Involved:

A.    Whether the evidence was insufficient to support the verdict of the jury finding [Appellant] guilty of "Disrupting Meetings and Processions" in violation of 18 Pa.C.S.A. § 5508?

B.    Whether the evidence was insufficient to support the verdict of the jury finding [Appellant] guilty of Disorderly Conduct in violation of 18 Pa.C.S.A. § 5503(a)(2)?

C.    Whether the evidence was insufficient to support the verdict of the jury finding [Appellant] guilty of Disorderly Conduct in violation of 18 Pa.C.S.A. §§ 5503(a)(1)?

D.    Whether the trial judge erred when he ruled that if [Appellant] testified that she triumphed in a civil action filed against her by the Jackson Township Supervisors that the prosecution would be permitted to introduce evidence of [Appellant's] plea of nolo contendere to an unrelated charge of summary Disorderly Conduct?

E.    Whether the lower court imposed an illegal sentence when it made a specific condition of probation that [Appellant] not be permitted to attend meeting of the Board of Supervisors of Jackson Township which condition impermissibly burdened her right to engage in political speech in violation of the First Amendment to the United States Constitution.

Brief for Appellant at 7 (some capitalization omitted).  As Appellant's first three claims challenge the sufficiency of the evidence to sustain her

convictions, we shall consider them together. In reviewing such claims, we employ a well-settled standard of review:

> [W]e examine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, support the jury's finding of all the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. **Commonwealth v. Doughty**, 126 A.3d 951, 958 (Pa. 2015).

**Commonwealth v. Lloyd,** 2016 WL 6962127, at *1 (Pa.Super. Nov. 29, 2016).

Appellant first maintains the Commonwealth's evidence was insufficient to prove beyond a reasonable doubt that she possessed the necessary intent under Pa.C.S.A. § 5508 to disrupt or prevent the meeting of the Board of Supervisors of Jackson Township on January 5, 2015. Brief for Appellant at 16-17. The crime of "Disrupting Meetings and Processions," is defined as follows:

> A person commits a misdemeanor of the third degree if, with intent to prevent or disrupt a lawful meeting, procession or gathering, he disturbs or interrupts it.

18 Pa.C.S.A. § 5508.

While she acknowledges that a review of the videotape of the January 5, 2015, meeting reveals she raised her voice and "lacked civility," and that the trial court's characterization of her behavior as obnoxious was a fair one, Appellant reasons her becoming "loud and abrasive is not synonymous with intending to disrupt or prevent the meeting." **Id**. at 18-19. We disagree.

- 11 -

As the trial court notes in its Pa.R.A.P. 1925(a) Opinion, the jury both heard testimony regarding and viewed the videotapes of Appellant's behavior at numerous public meetings, including that which occurred on January 5, 2015.[2] Appellant's behavior prevented the Jackson Township supervisors from conducting business on the agenda and forced them to adjourn the meeting prematurely. In addition, several Jackson Township residents who were present at the meeting testified that Appellant's behavior prevented them from meaningfully participating in their local government. *See* trial Court Opinion, filed 6/23/16, at 15 citing N.T. Trial, 12/16-17/15, at 178, *et seq.*; 256, *et seq.*; 258 *et seq.*; 261, *et seq.*; 264, *et seq.* Our review of the testimony in a light most favorable to the Commonwealth as the verdict winner supports the jury's finding that the Commonwealth established Appellant intentionally disturbed the Jackson Township meeting on January 5, 2015; therefore, this claim must fail.

Appellant further posits the Commonwealth's evidence to convict her of two counts of Disorderly Conduct was insufficient because it failed to

_____

[2] We note that while Appellant has provided us with two discs containing audio of the January 5, 2015, meeting as well as audio from others and some still photos, we were unable to access a video recording of any meeting. Appellant had the responsibility ensure that the record forwarded to this Court contained those documents necessary to allow a complete and judicious assessment of the issues raised on appeal. **Commonwealth v. Walker**, 878 A.2d 887, 888 (Pa.Super. 2005). Notwithstanding, Appellant's failure to include a video recording of the meetings in the certified record does not hamper our review, for we were able to listen to the exchanges and review testimony of various individuals regarding the same.

prove that she acted with an intent to cause public annoyance, inconvenience or alarm or that she made unreasonable noise. To obtain convictions for the charged counts of Disorderly Conduct, the Commonwealth must have established that:

> (a) . . . with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, [one]:
>
> (1) engages in fighting or threatening, or in violent or tumultuous behavior;
>
> (2) makes unreasonable noise[.]

18 Pa.C.S.A. §§ 5503(a)(1), (2). The aforementioned statute further provides that " 'public' means affecting or likely to affect persons in a place to which the public or a substantial group has access," including "any premises which are open to the public." 18 Pa. C.S.A. § 5503(c).

Appellant asserts that the Disorderly Conduct conviction pursuant to 18 Pa.C.S.A. § 5503(a)(1), which arose following Appellant's actions on August 17, 2015, in the office of one of the township supervisors, was not supported by sufficient evidence. Appellant reasons that because she engaged in an argument with Attorney Bametzreider and Supervisors Clyde Deck and Tom Houtz in a private office in the township building, and the Commonwealth did not present testimony from any individuals who had heard the confrontation, there was "no public disorder." *Id*. at 21-22. In addition, Appellant contends Section 5503(a)(1) requires a defendant to engage in "fighting or threatening, or in violent or tumultuous behavior," and

- 13 -

her act of crossing the threshold to the supervisor's office and raising her voice in an effort to discuss a matter with him was not a threatening or a violent act. *Id*. at 22-23.

Appellant's position that it is uncertain as to whether other individuals heard the confrontation ignores Subsection (c), for the evidence presented at trial clearly supported a finding that Appellant's actions met the "public" requirement under the statute. The record reveals Mr. Deck's office was located in the Jackson Township Municipal Building, a place open to the general public, and the doorway to the office connected the lobby to the office. N.T. Trial, 12/16-17/15 at 177. As a meeting had just adjourned, citizens were in the vicinity and close enough to overhear Appellant. This supports a finding that Appellant's words and actions affected or were likely to affect those individuals while they were in a public place. 18 Pa.C.S.A. § 5503(c). *See also Commonwealth v. Reynolds*, 835 A.2d 720,732 (Pa.Super. 2003) (holding that creating a risk of disorder is as criminal as actually causing disorder).

Also, Appellant's actions fall within the plain meaning of "tumultuous" under the statute. Appellant admits that as Attorney Bametzreider testified, she burst into Mr. Deck's private office uninvited and ignored his repeated requests to leave. She further admits that when Mr. Houtz entered the office, she began shouting at him. Indeed, she does not dispute Mr. Houtz's testimony that Appellant had attempted to provoke him to engage in

physical contact with her when she urged him repeatedly to "go ahead hit me; I know you want to hit me." Brief for Appellant at 21-22 citing N.T. Trial, 12/16-17/15, at 165, 176-77, 245. In addition, Mr. Houtz explained Appellant confronted him in an area adjacent to the public lobby where two citizens were seated in the meeting room. *Id*. at 246-47.

Appellant further acknowledges that she left the office only after repeated warnings from Messers. Bametzreider and Houtz. Brief for Appellant at 22 citing N.T. Trial, 12/16-17/15, at 245. These admissions, taken together with trial testimony that Appellant was aggressive, shouting and speaking more loudly than normal while individuals were in the vicinity of the building, support a conclusion that Appellant engaged in tumultuous behavior and created a disturbance on August 17, 2015, in a public arena.

Finally, the testimony regarding and the recordings of Appellant's behavior support a finding that she had the requisite *mens rea* under 18 Pa.C.S.A. 5503(a). The Commonwealth may meet the statute's specific intent requirement by showing that the Defendant recklessly (*e.g.*, consciously) disregarded a substantial and unjustifiable risk that his/her actions would cause public annoyance, inconvenience, or alarm. **Commonwealth v. Troy**, 832 A.2d 1089, 1094 (Pa.Super. 2003). Recklessness can also include a gross deviation from a reasonable person's standard of conduct in the same situation. *Id*. at 1094. As such, we find

the jury had sufficient evidence to convict Appellant under Subsection (a)(1) of the statute.

Appellant also reasons that while she became "somewhat loud" when she intended to engage the supervisors in a discussion during the public meeting on January 5, 2015, an inference cannot be drawn that she intended to cause public annoyance, inconvenience or alarm or that she was reckless under 18 Pa.C.S.A. § 5503(a)(2). Brief for Appellant at 19-20. Appellant avers that "[w]hile some might consider [her] comments to be impolite, they did not rise to the level of criminal conduct." *Id*. at 20.

Pursuant to Subsection (a)(2), this Court uses a two-part test to determine whether a person's actions constitute disorderly conduct (unreasonable noise)*. **Commonwealth v. Maerz**, 879 A.2d 1267, 1269 (Pa.Super. 2005). We will look at the content of a person's speech only to infer the requisite *mens rea* (intent or recklessness). **Id***. "Ultimately, however, what constitutes the *actus reus* of "unreasonable noise" under the disorderly conduct statute is determined solely by the *volume of the speech*, not by its content." **Id.** (emphasis in original). **See also Commonwealth v. Forrey**, 108 A.3d 895, 898 (Pa.Super. 2015). "Pennsylvania law defines unreasonable noise as 'not fitting or proper in respect to the conventional standards of organized society or a legally constituted community.'" **Id**. (citations omitted). One's presence in public "is merely necessary, but not alone sufficient, to convict of disorderly conduct. The Commonwealth must

also prove the particular act requirement, that the noise here was unreasonable, *i.e.,* inconsistent with neighborhood tolerance or standards." *Id*. at 899 (citation omitted)*.*

As has been noted previously, the record contains testimony of numerous witnesses that the January 5, 2015, meeting was adjourned prematurely due to the extreme disruption Appellant had caused. The jury had the benefit of viewing the entire episode, and this Court has heard the same. Upon doing so, we find sufficient evidence existed from which the jury properly found Appellant made unreasonable noise and intentionally had engaged in behavior not befitting of what is proper and acceptable at a public meeting. No relief is due.

Appellant next challenges the trial court's evidentiary ruling regarding prior court proceedings in which she had been involved. Our standard of review of the trial court's evidentiary rulings is as follows:

> Questions concerning the admission of evidence are left to the sound discretion of the trial court, and we, as an appellate court, will not disturb the trial court's rulings regarding the admissibility of evidence absent an abuse of discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence or record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. Sitler*, 144 A.3d 156, 163 (Pa.Super. 2016) (citations and internal quotation marks omitted).

Appellant references an exchange between Attorney Bametzreider and her that had been captured on video on January 5, 2015, and shown to the jury at trial. At that time, Appellant blurted out that she had been victorious at a prior hearing, at which time Attorney Bametzreider corrected her by stating: "No, that is not correct." N.T. Trial, 12/16-17/15, at 316. A discussion was held at sidebar following which it became apparent to the trial court that Appellant had been involved in a civil proceeding resolved by a Magisterial District Judge in Appellant's favor and also was convicted of a summary disorderly conduct charge.

The trial court determined that were Appellant to choose to present evidence pertaining to the proceeding resolved in her favor, the Commonwealth would be permitted to present evidence of the summary charges brought against her which resulted in a conviction. N.T. Trial, 12/16-17/15, at 315. The trial court indicated it rendered this decision cognizant of the fact that the jury hearing a brief exchange on the videotape which implicated prior litigation, such that both Appellant and Attorney Bametzreider may have subjectively believed their respective positions at the January 5, 2015, meeting had been the accurate one. Trial Court Opinion, filed 6/23/16, at 19-20. In response to the trial court's ruling, Defense counsel stated, "[m]y plan is not to bring it in any further, Judge." N.T. Trial, 12/16-17/15, at 315-16.

Ultimately, Appellant did not present testimony pertaining to any prior charges. Therefore, other than the brief reference on the videotape to a previous proceeding, the jury did not hear details concerning either the prior civil or criminal matter in which she had been involved. Nevertheless, Appellant argues herein that the reference was "irrelevant and highly prejudicial" in that "the Commonwealth opened the door to [Appellant's] testimony by introducing that portion of the tape into evidence at trial" and "wanted the evidence introduced and made a conscious decision to introduce the entire tape." Brief for Appellant at 24-25.

Preliminarily, we note that to preserve a claim of error for appellate review, a party must make a specific, timely objection to the alleged error before the trial court at the appropriate stage of the proceedings. **Commonwealth v. Charleston,** 16 A.3d 505 (Pa.Super. 2011), *appeal denied,* 612 Pa. 696, 30 A.3d 486 (2011); Pa.R.A.P. 302(a). Failure to raise a proper objection results in a waiver of the underlying issue on appeal. **See Charleston, supra**. Instantly, Appellant did not object at trial to the Commonwealth's playing of the video from the January 5, 2015, public meeting in its entirety. In addition, Appellant did not specifically object to the trial court's determination to permit the Commonwealth to present evidence of her *nolo contendere* plea were she to testify pertaining to her favorable court ruling; rather, counsel stated an intention not to reference

the prior court proceedings. N.T. Trial, 12/16-17/15, at 313. Accordingly, Appellant has waived his fourth issue for review on appeal.[3]

Lastly, Appellant maintains the trial court's condition of probation prohibiting her from attending meetings of the Jackson Township Supervisors so long as Attorney Bametzreider reads letters penned by her during the public comments portion of the meeting renders her sentence illegal as such provision "serves no rehabilitative purpose" and "impermissibly burdens her rights to free political speech" under the First Amendment to the United States Constitution. Brief for Appellant at 26-27.

We must first determine whether Appellant's challenge of this condition imposed on her probation constitutes a challenge to the legality of her sentence or whether it is, instead, a challenge to the discretionary aspects of sentencing. *Commonwealth v. Wilson*, 11 A.3d 519, 524 (Pa.Super. 2010), order vacated in part, 620 Pa. 251, 67 A.3d 736 (2013). A challenge to the legality of a sentence may be raised as a matter of right, is non-waivable, and may be entertained so long as the reviewing court has jurisdiction. *Id*. citing *Commonwealth v. Robinson,* 931 A.2d 15, 19–20 (Pa.Super. 2007) (*en banc*). This Court may *sua sponte* review an illegal sentence. *Id*. citing *Commonwealth v. Muhammed,* 992 A.2d 897, 903

---

[3] Even if Appellant had not waived this issue, we would conclude it merits no relief, as the trial court opinion properly disposed of the issue. **See supra**; **see also** Trial Court Opinion, filed 6/23/16, at 18-20.

(Pa.Super. 2010). Conversely, when one questions the discretionary aspects of her sentence, an appeal is not guaranteed as of right. **Id**. citing **Commonwealth v. Shugars**, 895 A.2d 1270, 1274 (Pa.Super. 2006) (explaining that to appeal the discretionary aspects of sentencing an appellant must have (1) preserved such claims below and (2) provided a Rule 2119(f) statement which raises a substantial question for our review in her appellate brief).

This Court repeatedly has held that a challenge to a condition of probation involves a matter specifically committed to the jurisdiction of the sentencing court under the Sentencing Code, 42 Pa.C.S. § 9754(b) and generally constitutes a challenge to the discretionary aspects of his sentence rather than to its legality. **See e.g.**, **Commonwealth v. Houtz**, 982 A.2d 537, 538 (Pa. Super. 2009) (challenge to probation condition "challenges the discretionary aspects of sentencing, not the legality of the sentence imposed"). A challenge to the legality of a sentence, however, "is essentially a claim that the trial court did not have jurisdiction to impose the sentence that it handed down." **Commonwealth v. Cappetlini**, 690 A.2d 1220, 1226 (Pa.Super. 1997) (quoting **Commonwealth v. Catanch**, 581 A.2d 226, 228 (Pa.Super. 1990)). This Court previously determined that a challenge to the condition of one's probation that she have no contact with her boyfriend or his family during her two years of probation on the grounds that it unduly restricted her liberty constituted a challenge to the discretionary aspects of

her judgment of sentence. ***Commonwealth v. Koren***, 646 A.2d 1205, 1208 (Pa.Super. 1994). This Court also has held that the trial court's placing a condition upon a defendant's probation that he not possess or use a computer, own a cell phone or PDA with Internet capabilities, or otherwise access the internet presented a challenge to the discretionary aspect of his sentence. ***Commonwealth v. Hartman***, 908 A.2d 316, 319 (Pa.Super. 2006).

In light of the foregoing, despite Appellant's contrary characterization, her final claim challenges the discretionary aspects of sentencing, not the legality of the sentence the trial court imposed. Accordingly, she is not entitled to an appeal of her sentence as of right, but rather to an allowance of appeal at the discretion or this Court. 42 Pa.C.S.A. § 9781(b).

When an appellant challenges the discretionary aspects of her sentence, this Court will utilize a four-part test to determine:

> (1) whether appellant has filed a timely notice of appeal, *see* Pa. R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa. R.Crim. P. [720]; (3) whether appellant's brief has a fatal defect, Pa. R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa. Cons.Stat.Ann. § 9781(b).

***Commonwealth v. Moury***, 992 A.2d 162, 270 (Pa.Super. 2010) (internal citations omitted).

Appellant filed a timely notice of appeal; however, while she filed a post-sentence motion *pro se* on March 23, 2016, wherein she stated her

sentence "should be modified to be reinstated to attending any meetings of the Jackson Township Boards. . . ," Appellant was represented by counsel at that time of that filing. The trial court scheduled a *Grazier*[4] hearing; however, in its Order entered on April 6, 2016, the court found that such hearing was not necessary as Appellant was represented by counsel who requested that Appellant's *pro se* post-sentence motion be withdrawn and indicated that Appellant would be pursuing the counseled appeal he had filed on her behalf. Trial Court Order, filed 4/26/16, at ¶ C. The trial court proceeded to order, *inter alia*, that the post-sentence motion was dismissed without prejudice. *Id*. at ¶ 2. A timely, counselled post-sentence motion challenging the discretionary aspects of Appellant's sentence was never filed, nor did Appellant object at sentencing. In addition, her brief does not contain the requisite Pa.R.A.P. 2119(f) statement. Accordingly, we find Appellant has waived her final challenge on appeal.[5]

---

[4] *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1988).

[5] Even if we were to address Appellant's challenge to the discretionary aspects of her sentence and find that it raised a substantial question on appeal, we would afford no relief. In imposing an order of probation, a court may require a defendant "[t]o satisfy any other conditions reasonably related to the rehabilitation of the defendant and not unduly restrictive of his liberty or incompatible with his freedom of conscience." 42 Pa.C.S.A. § 9754(c)(13). The trial court noted its "sentencing decision was an individualized response to the unique behavior of Appellant" whom the court acknowledged was generally a "law abiding citizen." Notwithstanding, the trial court felt it needed to both protect the citizens of Jackson Township by ensuring their elected representatives would be able to perform their duties and to facilitate Appellant's rehabilitation "by removing her from the
*(Footnote Continued Next Page)*

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/13/2017</u>

---

*(Footnote Continued)* ──────────

environment where she consistently caused problems." Trial Court Opinion, filed 6/23/16, at 23-24. In an effort to respect Appellant's passion toward and knowledge of Jackson Township's political issues, the trial court believed it unfair to her to prevent her from appearing at Township meetings and "completely silence" her. As such, in an effort to ensure her views were heard by the supervisors as well as other citizens who respected her point of view, the trial court crafted a sentence that permitted her thoughts to be relayed in writing by the Jackson Township solicitor. *Id*. at 24-25. In doing so, the trial court indicated it believed that its "sentencing scheme effectuated justice in a situation that was equally sad and unique." *Id*. at 25. We agree, and would have found that based upon the circumstances presented herein, the creative condition the trial court set on Appellant's probation did not completely curtail her First Amendment rights, was reasonably related to her rehabilitation, and was not unduly restrictive of her liberty as required under 42 Pa.C.S.A. § 9754(c)(13). Accordingly, we would have found no abuse of the sentencing court's discretion.